**E-FILED**
Monday, 27 August, 2007  12:37:44 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| JOSEPH BEAVERS, deceased, by his ) <br> Administrator Roman Dalton, and ) <br> ROMAN DALTON, Administrator ) <br> for Joseph Beavers, deceased, ) <br>                        **Plaintiffs** ) <br>    **v.** ) <br> ) <br> DAN WALSH, Champaign County Sheriff, ) <br> in his official capacity; JANE DOE and ) <br> JOHN DOE, in their individual and ) <br> official capacities, ) <br>                       **Defendants.** ) <br> _____ ) <br> DAN WALSH, Champaign County Sheriff, ) <br> in his official capacity, ) <br> ) <br>              **Third-Party Plaintiff,** ) <br>    **v.** ) <br> ) <br> EVECOM SYSTEMS, INC., ) <br> ) <br>           **Third-Party Defendant.** ) | Case No. 06-2121 |

# O R D E R

In June 2006, Plaintiff Joseph Beavers, deceased, by his Administrator, Roman Dalton, filed a Complaint (#1) against Defendant Dan Walsh in his official capacity as the Champaign County Sheriff (hereinafter "CCS"), alleging a violation of Beavers' civil rights pursuant to 42 U.S.C. § 1983.  In April 2007, CCS filed a Third Party Complaint (#20) against Evercom Systems, Inc. (hereinafter "Evercom"), alleging negligence, breach of contract, indemnification, and contribution.  Federal jurisdiction over CCS's third-party claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In May 2007, Evercom filed a Motion To Dismiss (#25).  After reviewing the pleadings and memoranda, this Court **GRANTS** Evercom's Motion To Dismiss (**#25**) in part and **DENIES** it in part.

## I.  Background

CCS alleged the following factual information in its third-party complaint against Evercom.  On January 17, 2003, Evercom entered into an exclusive contract with CCS to install and maintain an inmate telecommunication system in all of its jail and detention facilities. (#20-2, ¶ 1-2.)  The contract is in the form of CCS's request for proposal with Evercom having provided a written response to each paragraph of the proposal.  In the contract, Evercom agreed to install and maintain telephones with six-inch-long phone cords "in order to deter suicide attempts" in the jails.  (#20-2, ¶ 3; A Proposal to Provide Public and Inmate Phone Service, #28-2, p. 36.)  Also as part of the contract, Evercom agreed to:

> [I]ndemnify, hold harmless and defend the Champaign County Board, Sheriff, Correctional employees, and County employees against all liability, claims and costs of whatever kind and nature of injury or death of any person or persons . . . occurring in conjunction with, or in any way incident to, or arising out of the occupancy, use, service, operations, or work in conjunction with this agreement, resulting in whole or in part from the negligent acts or omissions of the offeror, its employees, agents, or representatives.

(#28-2, p. 34.)  In addition, Evercom agreed to maintain comprehensive general liability insurance coverage naming CCS as an additional party on that insurance policy.  (#20-2, ¶ 22.)

On June 26, 2004, Beavers committed suicide by hanging himself with one of the phone cords maintained by Evercom.  (#20-2, ¶ 4.)  The cord used in the apparent suicide was over six inches in length.  (#20-2, ¶ 5.)  The County had not been notified or warned that Evercom had failed to maintain the telephone cords at six inches or less.  (#20-2, ¶ 11(b).)

In March 2007, CCS filed a third-party complaint (#20-2) against Evercom alleging negligence, breach of contract, indemnification, and contribution.  In May 2007, Evercom filed a motion to dismiss CCS's breach of contract and indemnification claims based on failure to state a claim.

## II.  Standard

When considering a motion to dismiss, the Court must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the nonmoving

2

party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  Further, the Court should dismiss the claim only if the nonmoving party cannot prove any set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Bennett v. Schmidt*, 153 F.3d 516, 518-19 (7th Cir. 1998).

### III.  Analysis

Evercom argues that the Court should dismiss both the indemnification claim and the breach of contract claim because they both fail to state a claim.

### A.  CCS's Indemnification Claim

Evercom first argues that the Court should dismiss CCS's indemnification claim because Beavers' suicide did not arise out of or in connection with Evercom's performance of its duties; Illinois law requires a clear, explicit, or unequivocal expression of intent to indemnify a party for its own wrongful acts; and agreements to indemnify a party against its own willful misconduct are void as against public policy under Illinois law.  Evercom also argues that the Court should dismiss any separate theory of indemnity CCS may be attempting to make regarding a breach of the agreement "to maintain comprehensive general liability insurance coverage with [CCS] being named as an additional insured party."  (#20-2, ¶ 22.)

### 1.  Causation

Evercom first argues that the contract does not provide CSS a remedy for CCS's conduct because Beavers' suicide did not arise out of or in connection with Evercom's performance of its duties.  Specifically, Evercom contends that Beavers' suicide was a voluntary, intentional act that cut off any chain of causation leading to Evercom.  In support, Evercom relies on *Little v. Chicago Hoist & Body Co.*, 32 Ill.2d 156, 158-59 (Ill. 1965) (stating that "[t]he universal rule followed by most jurisdictions is that the victim's act of suicide is a new and independent agency breaking the chain of causation from the negligent act and is not reasonably foreseeable"), and *Cleveland v. Rotman*, 297 F.3d 569, 572-73 (7th Cir. 2002) (stating that suicide breaks the chain of causation between alleged attorney malpractice and the client's death).

3

Illinois courts have held that:

> Where it is reasonably foreseeable that a patient by reason of his mental or emotional illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential.  This duty contemplates the reasonably foreseeable occurrence of self-inflicted injury regardless of whether it is the product of the patient's volitional or negligent act.

*Winger v. Franciscan Med. Ctr.*, 701 N.E.2d 813, 820 (Ill. App. Ct. 1998) (quoting *Cowan v. Doering*, 522 A.2d 444, 449-50 (N.J. Super. Ct. App. Div. 1987)).  In addition, "[p]roximate cause will be established only in situations where the product is used for its intended purpose or for one reasonably foreseeable."  *Gilbertson v. Rolscreen Co.*, 501 N.E.2d 954, 958 (Ill. App. Ct. 1986).  Thus, the primary inquiry in determining whether a suicide breaks the causal chain is whether that suicide was reasonably foreseeable.

The contract plainly states that the phone cords must be maintained at six inches or less to deter suicide attempts.  The potential use of the phone cords for suicide attempts was clearly within the contemplation of the parties when the contract was made.  Thus, the possibility that a prisoner would use the cords to commit suicide was reasonably foreseeable and actually foreseen by the parties.  Therefore, the Court cannot grant Evercom's motion to dismiss the indemnification claim based on Evercom's causation argument.

### 2.  Unequivocal Expression of Intent

Evercom next argues that the Court should dismiss CCS's indemnification claim because the contract does not clearly express Evercom's intent to indemnify CCS against CCS's own wrongful actions.

Illinois law generally requires a clear, explicit, or unequivocal expression of intent to indemnify a party for its own wrongful acts.  Indemnity contracts are to be strictly construed against the indemnitee and "will not be construed as indemnifying against a party's own negligence unless . . . required by clear and explicit language in the contract, or such an intention is expressed in unequivocal terms."  *Karsner v. Lechters Ill., Inc.*, 771 N.E.2d 606, 609 (Ill. App. Ct. 2002) (holding that the phrase "any and all" in the parties' indemnity agreement was

4

insufficient to indemnify the indemnitee for its own negligence).  In *Karsner*, the court held that a clause indemnifying a store "from and against any and all claims, actions [sic] damages, liability and expense . . . arising from or out of the pick-up, transportation and delivery of the property of Lechters by carrier, and the use of any motor vehicle or other equipment by Carrier in connection therewith" did not indemnify the store against its own negligence.  *Id.* at 608; *but see Washington Group Int'l, Inc. v. Mason Mfg., Inc.*, 263 F. Supp. 2d 1115 (N.D. Ill. 2003) (rejecting *Karsner's* holding that the phrase "any and all" in the parties' indemnity agreement was insufficient to indemnify the indemnitee for its own negligence).  *See also McNiff v. Millard Maint. Serv. Co.*, 715 N.E.2d 247, 249 (Ill. App. Ct. 1999) (holding that a contract indemnifying a property manager "wholly . . . from any damages, claims, demands, or suit . . . arising out of any acts or omissions by the Contractor, his agents, servants or employes [sic]" did not extend to the property manager's own negligence).

However, if a contract's clear and explicit language requires indemnification, it is a court's responsibility to enforce that agreement.  *Chi. Hous. Auth. v. Fed. Sec., Inc.,* 161 F.3d 485, 487 (7th Cir. 1998) (applying Illinois law).  Furthermore, under some circumstances, courts have broadly construed the language of an indemnification clause to cover conduct by the indemnitee even though the contract language did not expressly indemnify the indemnitee.  In *Chicago Housing Authority*, two security guards employed by Federal Security, Inc. (hereinafter "FSI"), and working under a contract for the Chicago Housing Authority (hereinafter "CHA"), shot and killed Levangelist Hightower, the son of Beverly Hightower.  Beverly sued the guards, the CHA, and FSI.  Before the trial began she settled with all of the defendants.  The court then considered the dispute between the CHA and FSI over whether FSI had an enforceable duty to indemnify CHA.  The indemnification clause at issue provided that the security contractor, FSI, promised "to completely indemnify and hold harmless CHA . . . against any liability or expense . . . *arising out of* any losses, claims, damages or injury resulting from any intentional acts or any negligent acts or omissions of [FSI] or its agents in the performance of this contract." *Id.* at 489 (emphasis in original).  The Seventh Circuit court stated that the "arising out of" language "gives the clause a broader scope, which reaches the particular breed of negligence [in hiring, training and retaining FSI] ascribed to the CHA here."  *Id*.  In addition, the court

5

concluded that the clause also indemnified CHA for its intentional conduct – in this case, deliberate indifference to ongoing illegal activity by FSI's guards.  *Id.*  Similarly, an Illinois court has stated that, "[i]n an indemnity agreement, a general reference to 'any and all' claims, losses, injuries, and the like, will generally be construed as indicating an intention by the parties that the indemnitee be indemnified for damages resulting from the indemnitee's own negligence."  *Econ. Mech. Inds., Inc. v. T.J. Higgins Co.*, 689 N.E.2d 199, 202-03 (Ill. App. Ct. 1997).

> The clause at issue in this case provides as follows:

> The contractor will indemnify, hold harmless and defend the Champaign County Board, Sheriff, Correctional employees, and County employees against all liability, claims and costs of whatever kind and nature of injury or death of any person or persons and from loss of damage to any property occurring in conjunction with, or in any way incident to, or arising out of the occupancy, use, service, operations, or work in conjunction with this agreement, resulting in whole or in part from the negligent acts or omissions of the offeror, its employees, agents, or representatives.

(#28-2, p. 34.)  As an initial matter, the indemnification clause is limited to acts of omissions by "the *offeror*, its employees, agents, or representatives."  (#28-2, p. 34 (emphasis added).) Neither party specifically addresses the meaning of the word "offeror" in their memoranda. Because the contract is in the form of Evercom's response to CCS's request for proposal, it is unclear at first glance whether the word "offeror" as used in this clause refers to Evercom or CCS.  Evercom contends that the indemnification is limited to Evercom's conduct.  The Court observes that the contract usually refers to Evercom as "contractor" or the "proposer" and to CCS by its name.  *See Karsner*, 771 N.E.2d at 608 (stating that "[w]hen interpreting indemnity contracts, the agreement between the parties must be given a fair and reasonable interpretation based upon a consideration of all the language and provisions in the contract").  With that additional information, particularly the use of the word "proposer" to refer to Evercom, it appears clear to the Court that Evercom is the "offeror."  Furthermore, it makes sense that a phrase limiting the scope of an indemnification clause would seek to eliminate liability for acts of the indemnitee, rather than the indemnitor.

CCS apparently does not dispute that the plain language of the clause limits indemnification to Evercom's conduct.  Instead, it contends that the Court should construe this language expansively as did the Seventh Circuit court in *Chicago Housing Authority*.  Indeed, the language in the clause as issue is very broad and extends coverage to "all liability, claims and costs of whatever kind."  It also includes the "arising out of" phrase.  (#28-2, p. 34.)  Based on the *Chicago Housing Authority* decision, this language does not preclude indemnity based on CCS's own conduct.

More significantly, the indemnification clause in this case, unlike the clause in *Chicago Housing Authority*, explicitly limits indemnification to injuries resulting from *negligent* conduct. Plaintiff Beavers' claims against CCS allege that CCS violated his constitutional rights pursuant to 42 U.S.C. § 1983.  It is well established that Section 1983 claims cannot be founded on negligence.  *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006); *Chi. Hous. Auth.*, 161 F.3d at 488 (stating that it is well established that "a § 1983 claim requires proof of intentional acts to deprive the victim of her civil rights").  As a result, CCS's liability, if any, for Beavers' underlying claim must be based on CCS's intentional conduct.  The fact that the indemnification clause in this case limits indemnification to negligent conduct distinguishes it from the clause in *Chicago Housing Authority*, in which case the indemnification clause expressly referred to both *intentional* and *negligent* conduct.  Thus, even if the Court were to construe the language of the indemnification clause at issue here to cover CCS's conduct, the language of the clause expressly limits indemnification to negligent conduct. Thus, the clause cannot apply to CCS's alleged intentional conduct pursuant to the Section 1983 claims in Beavers' complaint.  Accordingly, the Court dismisses the indemnification claim to the extent liability is based on CCS's intentional conduct pursuant to Section 1983.

### 3.  Public Policy

Evercom also argues that the Court should dismiss CCS's indemnification claim because agreements to indemnify against a party's own willful misconduct are void as against public policy under Illinois law.

7

In Illinois, agreements to indemnify against intentional misconduct are generally "contrary to public policy and unenforceable." *Davis v. Commonwealth Edison, Co.*, 336 N.E.2d 881, 885 (Ill. 1975); *Lincoln Logan Mut. Ins. Co. v. Fornshell*, 722 N.E.2d 239, 242 (Ill. App. Ct. 1999).  However, "public policy also favors affording compensation to victims." *Id.*  Thus, there is no bright-line rule prohibiting indemnification for intentional acts.  *See Chi. Hous. Auth.*, 161 F.3d at 488-89 (enforcing indemnity clause as to a claim of intentional conduct in a claim brought pursuant to 42 U.S.C. § 1983).

CCS relies on *Chicago Housing Authority* to support its contention that the indemnification clause covers its (CCS's) intentional conduct.  In that case, the Seventh Circuit restated the Illinois Supreme Court's holding that an agreement to indemnify against willful misconduct would, as a general rule, be contrary to public policy and unenforceable.  The Seventh Circuit court based its decision on the relative culpability of the parties, stating as follows:

> [T]o the extent [plaintiff's] original complaint included charges against the CHA at all, its allegations related to CHA's dealings with FSI.  Thus, . . . it claimed that the CHA was deliberately indifferent to ongoing illegal activity by the FSI guards, and that the CHA was negligent in choosing FSI as the security provider. We see nothing in the general Illinois rule against contracts to indemnify someone for the consequences of its intentional or negligent acts that would preclude enforcement of a contract requiring the primary wrongdoer to bear the financial burden of its actions.

*Id.* at 489.  Thus, the court considered FSI to be the more culpable party.  *See Gibbs-Alfano v. Burton*, 281 F.3d 12, 23 (2d Circ. 2002) (stating that CHA, the party seeking indemnification, was "essentially charged with nonfeasance arising from a more culpable party's malfeasance").

CCS contends that Evercom should be required to indemnify CCS for its intentional conduct because Evercom is the primary wrongdoer for breaching its contract to install the proper phone cord.  Moreover, dismissing the indemnification claim would allow Evercom to walk away from its promise to indemnify after it breached the contract.

8

The Court disagrees.  First of all, this argument ignores CCS's remaining claims of negligence, contribution, and breach of contract against Evercom.  More importantly, we think the relative culpability of the parties in this case does not warrant holding Evercom liable for CCS's alleged intentional conduct of being deliberately indifferent to Beavers' needs while Beavers was confined in the Champaign County jail.

Based on the pleadings, CCS is asking the party accused of negligent conduct (Evercom) to indemnify the conduct of the party accused of deliberate indifference (CCS).  (#1, ¶ 18.)  Thus, CCS seeks indemnification from a less culpable party for CCS's own intentional acts.  As a matter of public policy, such indemnification is disfavored and, while not unenforceable *per se*, there are no exceptional circumstances here that warrant enforcement of the indemnity clause.  The Court concludes that enforcing the agreement would be contrary to public policy.  To hold otherwise would, we think, be inconsistent with the Seventh Circuit's interpretation of Illinois law in *Chicago Housing Authority* which included consideration of the relative culpability of the parties.  Furthermore, the indemnification clause of the contract is explicitly limited to negligent conduct and makes no mention of intentional acts.  Therefore, the Court concludes that public policy provides an additional basis for granting the motion to dismiss CSS's indemnification claim.

### 4.  General Liability Insurance

Evercom next argues that CCS fails to allege a separate theory of indemnity in its complaint regarding Evercom's agreement to maintain general liability insurance coverage.  Paragraph 22 of the Third Party Complaint states as follows:  "Evercom further agreed to maintain comprehensive general liability insurance coverage with the Defendant/Third Party Plaintiff, Champaign County Sheriff Dan Walsh/Champaign County being named as an additional insured party on that insurance coverage."  (#20-2, ¶ 22.)

CCS does not contest that it failed to state a claim regarding general liability insurance coverage.  In fact, CCS responds that it is not attempting to allege a separate claim regarding the general liability insurance policy.  CCS states that the allegation regarding the existence of the

insurance policy requirement helps show that Evercom intended to indemnify CCS as alleged in the indemnification claim.  Because CCS does not challenge Evercom's argument, the Court grants Evercom's motion to dismiss to the extent the complaint may be viewed as alleging a claim pertaining to general liability insurance as an independent basis of liability.

### B.  CCS's Breach of Contract Claim

Evercom next argues that the Court should dismiss CCS's breach of contract claim because the alleged breach did not proximately cause the suicide, the claimed damages are speculative, the contract does not contemplate the nature of the alleged damages, and the claim duplicates CCS's indemnity claim.

### 1.  Causation

Evercom argues that the Court should dismiss CSS's breach of contract claim because Beavers' suicide did not arise out of or in connection with Evercom's performance of its duties.

Evercom's argument for dismissing the breach of contract claim for lack of causation is the same as its argument for dismissing the indemnification claim for lack of causation.  As noted above, the contract expressly addressed the potential use of phone cords in suicide attempts.  Accordingly, Evercom's argument regarding causation fails.

The Court notes that Evercom has not raised the question of whether CCS's alleged intentional conduct could conceivably break the causal chain between Evercom's alleged breach and Beavers' suicide.  However, the Court need not consider this issue at this point.

### 2.  Speculative Damages

Evercom next argues that the Court should dismiss CCS's breach of contract claim because the damages are impermissibly speculative.  Specifically, Evercom contends that "it is unclear *whether* any judgment will be obtained against CCSD, and moreover, *if* such a judgment is rendered, *how* much that judgment will be."  (#26, p. 8 (emphasis in original).)  Evercom has failed to cite any authority to support this argument.  "A litigant who fails to press a point by

supporting it with *pertinent* authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point."  *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) (emphasis in original).  Therefore, the Court will not grant Evercom's motion to dismiss the breach of contract claim based on speculative damages.

### 3.  Contemplated Damages

Evercom next argues that the Court should dismiss CCS's breach of contract claim because the contract did not contemplate "that Evercom would be liable for the costs of, and judgments obtained in, future litigation."  (#26, p. 9.)

Contract damages are recoverable so far as they "may reasonably be supposed to have been in the contemplation of the parties as they made the contract."  *Sheppard v. Fagan*, 418 N.E.2d 876, 879 (Ill. App. Ct. 1981).

Evercom has agreed to indemnify CCS for Evercom's negligence.  The indemnification extends to "all liability, claims and costs of whatever kind."  (#28-2, p. 34.)  This language is broad enough to include liability for costs and judgments resulting from litigation.  Thus, the Court will not grant Evercom's motion to dismiss the breach of contract claim on the basis that the contract failed to contemplate damages that might arise from litigation.

### 4.  Duplication

Evercom last argues that the Court should dismiss CCS's claim for breach of contract because it duplicates CCS's indemnity claim.

In this argument, Evercom relies on *Neade v. Portes*, which states that, "[w]hile pleading in the alternative is generally permitted, duplicative claims are not permitted in the same complaint."  *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000).  However, the *Neade* court applied the above principle in declining to permit "the creation of [a] new cause of action."  *Id.* Specifically, the *Neade* court declined to allow the plaintiff to allege both medical negligence

and breach of fiduciary duty, a cause of action that Illinois courts had never before recognized against physicians.  *Id.* at 500-501, 503.

This case does not involve the creation of a new cause of action.  Moreover, the potential damages from an indemnity claim and a breach of contract claim could be significantly different. Finally, because the Court has dismissed CCS's indemnification claim, the argument that the breach of contract claim is duplicative has no merit.  Therefore, the Court denies Evercom's motion to dismiss the breach of contract claim on this basis.

## IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendant's Motion To Dismiss **(#25)** with respect to CCS's indemnification claim and any independent claim based on general liability insurance and **DENIES** the motion with respect to CCS's breach of contract claim.

ENTER this 27th day of August, 2007

_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE